IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ACE FIRE UNDERWRITERS INSURANCE COMPANY as subrogee of New South Construction Company, Inc.,

Plaintiff,

v.

ALC CONTROLS, INC., et al.,

Defendants.

CIVIL ACTION FILE
NO. 1:07-CV-606-TWT

ORDER

This is property damage subrogation action. It is before the Court on the Defendant ALC Controls, Inc.'s Motion for Summary Judgment [Doc. 80] and Defendant Automated Logic Corporation's Motion for Summary Judgment [Doc. 81]. For the reasons stated below, the motions are granted.

I. Background

ACE Fire Underwriters Insurance Company ("ACE") brought this case as a subrogee of New South Construction Company, Inc. ("New South"). The dispute arises out of property damage caused by an accidental discharge of a fire sprinkler system at the Lovinggood Middle School in Cobb County, Georgia. On January 26, 2006, Lovinggood's HVAC Fire Protection System malfunctioned. Several entities

helped build the HVAC system. ALC Controls, Inc. ("ALC") sold the HVAC system to New South and was responsible for installing it.

Automated Logic, Inc. designed and manufactured the controller for the HVAC unit. The SE6104 controller is designed to read data from the room's sensors for the purpose of figuring out whether to instruct the unit to discharge hot or cold air. The controller contains software architecture that an installer or end user can program for specific uses. ALC subcontracted most of the work to Gainesville Mechanical and Worsham Sprinklers. Although ALC programmed the SE6104 unit, Gainesville Mechanical and Worsham Sprinklers installed the HVAC system and the fire sprinkler system. The Plaintiff alleges various tort claims against ALC and Automated Logic. Both Defendants move for summary judgment.

II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S.

317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

### A. Automated Logic

Automated Logic moves for summary judgment on the Plaintiff's product liability claims. The Plaintiff asserts that Automated Logic breached its "duty to exercise reasonable care in manufacturing its products so as to make products that are reasonably safe for intended or foreseeable uses." (Pl.'s Resp. to Automated Logic's Mot. for Summ. J., at 20.). Although the Plaintiff claims that it is not making a strict liability claim, it relies almost exclusively on Georgia's strict liability statute in order to supply the appropriate legal standard. See O.C.G.A. § 51-1-11(b)(1) ("The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to *any natural person* who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.") (emphasis added). See Moore v. ECI Management, 246 Ga. App. 601, 604 (2000) (treating § 51-

1-11(b)(1) as a "strict liability" statute); United States Fidelity & Guaranty Company v. J.I. Case Company, 209 Ga. App. 61, 63 (1993). But the Plaintiff and its insured, as corporations, are not "natural person[s]" within the meaning of the statute. United States Fidelity & Guaranty Company, 209 Ga. App. at 63 ("O.C.G.A. § 51-1-11(b)(1) restricts such actions to 'natural persons.'"); Mike Bajalia, Inc. v. Amos Construction Company, Inc., 142 Ga. App. 225, 226-27 (1977); GLENDA K. HARNAD, 15 GA. JUR. PERSONAL INJURY AND TORTS, § 39:22 (August 2007) ("The Georgia strict liability statute provides a cause of action in tort exclusively for natural persons. A corporation, therefore, is prohibited from bringing or maintaining a strict liability tort action against the manufacturer of an allegedly defective product."). Therefore, the Defendants are entitled to summary judgment on any strict liability claims.

The Plaintiff's negligence claim is complicated by the fact it fails to explicitly delineate whether it is advancing a design defect or manufacturing defect claim. The Response fails to meaningfully distinguish the two. It speaks, only generally, about the "Proof of Product Defect" without clarifying what aspects of the product are defective. This problem is not a small one. Manufacturing defect claims and design defect claims are quite different. Manufacturing defects assume that the product line is safe. Banks v. ICI Americas, Inc., 264 Ga. 732, 733-34 (1994). The product's defectiveness is determined by measuring the product in question against the

benchmark of the manufacturer's designs. Id. A product is defectively designed, on the other hand, when there is a problem with the entire product line. In other words, even though a product might be manufactured perfectly according to specifications, the product's designs themselves render it defective. Id. Design defect claims are more complicated, because courts have to "supply the standard for defectiveness." Id. at 734 ("[T]he term 'defect' in design defect cases is an expression of the legal conclusion to be reached, rather than a test for reaching that conclusion."). Georgia law uses a risk-utility analysis in order to determine whether a design is defective. Id. at 735 ("[W]e conclude that the better approach is to evaluate design defectiveness under a test balancing the risks inherent in a product design against the utility of the product so designed."). A key measure of a design's utility is "the availability of alternative designs, in that the existence and feasibility of a safer and equally efficacious design diminishes the justification for using a challenged design." Id.

The gist of the Plaintiff's argument is that the SE6104 controller unit, for some reason, defaulted to a 45 degree temperature reading, and instructed the unit to discharge hot air until the room got so hot that the sprinklers were activated. The Plaintiff alleges that the SE6104 was defective for the following reasons: (1) the SE6104 program was poorly designed and needed a "trap" in order to operate more effectively; (2) the firmware malfunctioned by defaulting to 45 degrees. But the

Plaintiff presents no evidence for these allegations. The Response is silent on the critical question of whether the risks or costs of alternate designs outweighed the benefits of the SE6104 current design. Although it continues to refer to the defect as a "known fact," it has failed to direct the Court towards evidence or testimony that engages in the appropriate risk-balancing. The list of factors that a court might weigh when determining whether a product was defectively designed is long, and includes specific factors such as:

> [T]he usefulness of the product; the gravity and severity of the danger posed by the design, the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger; the user's ability to avoid danger, the state of the art at the time the product is manufactured; the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; and the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance.

Id. at 736 n.6. But "no finite set of factors can be considered comprehensive or applicable under every factual circumstance, since such matters must necessarily vary according to the unique facts of each case." Id. at 736.

The Plaintiff's design defect claim amounts to a strict liability claim. It alleges that Automated Logic created the SE6104, and therefore, Automated Logic is responsible for any problems associated with either the SE6104 or the HVAC controller unit. But it has failed to put forth specific evidence that the SE6104, as

designed, fails a risk-utility analysis. Neal v. Miller, 194 Ga. App. 231, 232 (1990) ("Negligence is not to be presumed, but is a matter of affirmative proof. In the absence of affirmative proof of negligence, we must presume performance of duty and freedom from negligence."). Even if the SE6104 had a tendency to default to a 45 degree reading, without an assessment of the overall utility of the design, the reasonableness of the design given the latest available technology, and the feasibility and cost of retrofitting every school with a "trap" that would have fixed this problem, the Plaintiff has not put forth sufficient evidence to survive summary judgment. Automated Logic is entitled to summary judgment on the design defect claim.

The same goes for the manufacturing defect claim. The Plaintiff has failed to identify how the SE6104 failed to conform to Automated Logic's designs. It assumes that because there was a problem with the unit that it must be because of some negligence. At best, the Plaintiff's argument is an effort to impose *res ipsa loquitur* liability on the Defendants. See Miller v. Ford Motor Co., 287 Ga. App. 642, 645 (2007). But *res ipsa loquitur* does not apply in this case for a variety of reasons. See id. (rejecting application of *res ipsa loquitur* where (1) manufactured devices were at issue, and (2) the product was not in the exclusive control of the defendant). Automated Logic is entitled to summary judgment on the manufacturing defect claim.

B. ALC Controls

ALC Controls is entitled to summary judgment on the Plaintiff's negligence claims. The Plaintiff argues that ALC Controls is liable in tort because it failed to fix the problems with the SE6104 controller unit. Although ALC Controls did not manufacture the unit, it was responsible for its proper installation. First, because the Plaintiff has failed to demonstrate that the SE6104 controller unit was defective, ALC Controls cannot be liable for its failure to remedy that which was not legally "defective" (in design or through manufacture). Second, the Plaintiff has failed to establish the element of foreseeability. See Love v. Morehouse College, Inc., 287 Ga. Ap. 743, 744-45 (2007) ("Duty cannot be divorced from foreseeability, however, and thus it follows that, to establish a breach of the applicable standard of conduct to support a negligence action, there must be evidence that the act (or omission to act) alleged to be negligent created a *foreseeable* unreasonable risk of harm.") (quotations omitted). The Plaintiff contends that "[i]n order for a party to be liable for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient, if in ordinary prudence he might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might result." Lewis v. Harry White Ford, Inc., 129 Ga. App. 318, 320 (1973). But the Plaintiff is not insured against protection from remote or extremely improbable injuries. See Watson v. General Mech. Serv., Inc.,

276 Ga. App. 479, 482 (2005) ("Negligence is predicated on what should be anticipated, rather than on what happened, because one is not bound to anticipate or foresee and provide against what is unlikely, remote, slightly probable, or slightly possible.") (citing Amos v. City of Butler, 242 Ga. App. 505, 506 (2000)).

The Plaintiff has failed to put forth evidence suggesting that it was even remotely foreseeable that excess heat discharge might accidentally trigger the sprinkler system. Although it contends that ALC Controls was on notice that other schools experienced malfunctions with the SE6104 unit, none of the other schools experienced anything like the freak accident that took place at the Lovinggood Middle School. Common sense suggests that excess heat flow might cause discomfort to people inside the school (even though construction on the school was not yet completed at the time of the discharge). Perhaps there was a risk that the energy bill would run high. But it is a stretch to assume that it was reasonably foreseeable that a failure in the controller unit would cause the heat to run for so long that the sprinkler system would accidentally discharge. See Feldman v. Whipkey's Drug Shop, 121 Ga. App. 580, 581 (1970) ("One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what is only remotely and slightly probable."). The Plaintiff has failed to

cite any historical evidence that should have put the Defendants on notice. The Plaintiff's only argument is that the Defendants did not have to foresee this exact injury. Rather, it only had to know that some harm would result. Although it was foreseeable that some harm might have resulted, the fact that the foreseeable harms were not of the same magnitude as the injury that occurred bears on the reasonableness of the Defendants' conduct. Georgia Power Co. v. Carden, 128 Ga. App. 347, 350 (1973) ("Where an injury results from an alleged defect which is not of itself of such dimensions or character as to make an accident probable, it does not justify the submission to the jury of the question of negligence.")

Finally, the Plaintiff has failed to establish the contours of the legal duty that ALC Controls owed. It simply asserts that ALC Controls should have known that there was a risk of harm if it failed to fix any problems with the SE6104 controller unit. But the scope of ALC Controls' duty, as the Plaintiff describes it, was to ensure that nothing went wrong with the system. Indeed, the Plaintiff's argument is, in essence, that ALC Controls is responsible in tort for anything that might go wrong with the HVAC controller unit. As noted above, the strict liability statute is inapplicable.

IV. Conclusion

For the reasons stated above, the Defendant ALC Controls, Inc.'s Motion for Summary Judgment [Doc. 80] and Defendant Automated Logic Corporation's Motion for Summary Judgment [Doc. 81] are GRANTED.

SO ORDERED, this 27 day of May, 2008.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge